KUKER v. McINTYRE.

1. MARRIED WOMAN—MORTGAGE.—Under the law authorizing a married woman "to contract and be contracted with, as to her separate property, in the same way as if she were unmarried," she has full power to execute a mortgage to secure a contract made by her as to her separate property.
2. IBID.—IBID.—FINDINGS OF FACT.—A married woman is not liable to plaintiff on her bond and mortgage, where referee and Circuit Judge find that they were given to secure the husband's indebtedness, the testimony sustaining these findings, and the burden being on plaintiff to show that the contract was as to defendant's separate property.
3. IBID.—IBID.—IBID.—Other findings of fact by the Circuit Judge as to payment sustained, and a harmless error as to the location of a credit disregarded.
4. IBID.—IBID.—APPLICATION OF PAYMENTS.—Payments made by a married woman to her creditor must be applied to her valid indebtedness, and cannot be applied to a bond signed by her, but void under the law.

Before NORTON, J., Florence, June, 1894.

Action by John Kuker against Ella McIntyre, commenced in May, 1893.

*Messrs. Johnsons, DeJongh & Hanckel,* for appellant.

*Mr. W. F. Clayton,* contra.

February 18, 1895. The opinion of the court was delivered by

MR. JUSTICE POPE. The appellant as plaintiff sought to foreclose a mortgage upon a tract of land containing 260 acres, and situated in Florence County, in this State. His action, therefore, against the defendant (respondent here) alleged that she executed such mortgage to him on 15th December, 1883, to secure her bond of even date with the mortgage in the penal sum of $2,000, conditioned that she would pay the plaintiff $1,000 twelve months thereafter, with interest at ten per cent. per annum until paid. The answer admitted that she had executed the bond and mortgage, but alleged that at that time she was, and now is, the wife of Richard H. McIntyre; that the debt evidenced by the bond and secured by the mortgage

was not her debt, but that of her said husband, and in no wise concerned her separate estate. The answer also alleged payment of any debt due by the defendant to the plaintiff. All the issues of law and fact were, by consent, referred to J. P. McNeill, Esq., as special referee, who took the testimony on both sides. By his report, he sustained the contention of the defendant, that at least $600 of the debt secured by the mortgage was that of the husband, Richard H. McIntyre, to the plaintiff, beginning in 1880 and ending prior to 15th December, 1883. But he held that the plaintiff had advanced $300 in cash to the defendant on the 15th December, 1883, which the mortgage was intended to secure, and that after all proper credits were allowed the defendant, she was still indebted to the plaintiff in the sum of $100.66, and he recommended a foreclosure of the mortgage and sale of the land to pay this last named sum. To this report both parties to the action duly excepted.

The cause came on for trial before his honor, Judge Norton, who, on the 7th day of July, 1894, decreed that all findings of facts and conclusions of law of the special referee should be sustained, except that he reversed that finding of the special referee wherein the defendant was said to owe the plaintiff $100.66, and that plaintiff was entitled to a foreclosure of the mortgage to pay that sum. On the contrary, he decreed that the defendant had fully paid the plaintiff all she owed him, and, therefore, the complaint should be dismissed.

From this judgment the plaintiff now appeals upon five grounds, as follows: "I. Because his honor erred in not sustaining the exceptions of the plaintiff, and in not holding that the whole consideration of the bond and mortgage was for purchases made by the defendant from the plaintiff, and for goods purchased by her from him, and for money received by her from him on the day the bond and mortgage were given, and that it all was for the benefit of her separate estate. II. Because his honor erred in not holding definitely that Mrs. McIntyre received at least $400 in money and goods on the day the bond and mortgage were given, and that her separate estate was chargeable with the same. III. Because his honor erred in his statement in giving the defendant credit for the $149.75,

when she got credit for the same on the bond on the 14th October, 1884, and went to reduce the balance on the 15th December, 1886, to $871.54. IV. Because his honor erred in applying payments entirely to the extinguishment of either the $300 or the $400, found by his honor, when they were made generally on the bond without any direction as to how they should be applied. V. Because his honor erred in concluding that any portion of the bond and mortgage were given to extinguish any indebtedness of R. H. McIntyre."

The defendant gave notice that in case this court should be unable to sustain the judgment below on the grounds therein embodied, she would ask that the power of a married woman to execute a mortgage be denied. We may remark in the outset that we are unable to agree with the defendant that a married woman has no power to execute a valid mortgage. If a married woman has full power "to contract and be contracted with, as to her separate property, in the same way as if she were unmarried," it seems to us that it logically follows that she may pledge the same or any part thereof to secure her contract in regard to such separate property.

The appellant's fifth ground of appeal assails the Circuit decree for finding that any portion of the bond and mortgage in question were given to extinguish any indebtedness of the husband, Richard H. McIntyre, to the plaintiff, John Kuker. All parties concede that on the 15th day of December, 1883, the defendant was the wife of said Richard H. McIntyre, and that the plaintiff knew of that relationship; that the tract of 260 acres of land belonged to the separate estate of the wife; that Richard H. McIntyre had been for years prior to 15th December, 1883, purchasing merchandise from the plaintiff on a credit, and that from time to time such purchases were being secured by mortgages of a horse or two, a mule or two, cattle, wagon, and buggy, as well as by agricultural liens, and that on the 15th December, 1883, such indebtedness amounted to $600 or $700. John Kuker, at that last date, had determined to make a change as to that indebtedness, and just here it is that the parties collide. The plaintiff con-

tends that on that date Richard H. McIntyre surrendered to him the property he had mortgaged to plaintiff, in full payment of all his indebtedness, and that same day he sold all such mortgaged personal property to *Mrs.* Ella McIntyre at about the price of $600, on a credit of twelve months, and that Mrs. McIntyre, in order to secure that debt, as well as $300 in cash and $100 in goods, aggregating $1,000, executed the bond and mortgage now in controversy. On the other hand, the defendant contends that she was persuaded by her husband to assume the payment of his debt to the plaintiff, and is not very positive as to how the other portion of the $1,000 was made up.

No bill of sale of the personal property was made by the plaintiff to the defendant. At the trial, some eleven years afterwards, witnesses attempt to tell what the personal property consisted of. John Kuker says: "I had bills of sale and liens for 1883, at the time of execution of mortgage (by defendant); Mrs. McIntyre * * bought the stock, and buggies, and wagons, and, in fact, everything I had under bill of sale." Now the bills of sale referred to were as follows: that of 22d May, 1882, covered one bay mare *mule*, about seven years old, and four head of cattle; that of 17th September, 1883, one *black mare*, about eight years old; that of 26th November, 1880, covered one two-horse Lowry wagon, one new top buggy, one bay mare, eight years old, one bay, swapped for grey, horse; and that of 2d March, 1882, one black horse mule, nine years old, one two-horse wagon. But his witness, J. DeJongh, says: "I think there were three or four horses advanced to her. There were two fine horses, valued at $350, as he paid that price in Charleston. The other two were common horses, worth about $125 each. * * The wagon was worth $25 or $30, buggy was worth about $85." Aggregate these amounts, and the property turned over by this witness' estimate was $710 or $715. Thus John Kuker has it that he sold to the defendant three horses, two mules, four head of cattle, one buggy, and one wagon. Richard H. McIntyre states in his testimony that he had only two horses at the date of his wife's mortgage, but that no property was sold to defendant. The witness, DeJongh, says Richard H. McIntyre turned over the mortgaged property to plaintiff

before the date of wife's mortgage, and the plaintiff sold the same to defendant on date of her mortgage. The defendant denies that she bought any horses from plaintiff, but that she assumed the payment of her husband's debt, while the husband swears that no sale was made, but that his wife gave the bond and mortgage to save him from a forced sale of his property.

Now, here is presented a strange spectacle. Plaintiff and his witness swearing to one state of facts; defendant and her witness swearing to another state of facts. There is, however, a very significant written statement, at least five times repeated by John Kuker, the plaintiff here, *dated the 15th December, 1883*, which is as follows: "Satisfied the within by mortgage and bond, dated December 15th, 1883. John Kuker." This statement appears on the back of R. H. McIntyre's note to him for $140.75; also on the back of R. H. McIntyre's bill of sale dated May 22d, 1882; also on the back of R. H. McIntyre's bill of sale dated 15th January, 1883; also on the back of the bill of sale of R. H. McIntyre dated 19th September, 1883; and also on the back of the bill of sale of R. H. McIntyre dated 2d March, 1882. May not this memorandum, signed by the plaintiff at the time of the transaction, when everything was fresh in his mind, solve the difficulty? The special referee so finds. The Circuit Judge concurs in such finding. Under our established rule we will not disturb the finding of fact by them separately made; especially as, under the law, the burden was on the plaintiff to establish the debt as one against the separate estate of the married woman. Hence the fifth exception is overruled.

As to the first exception, complaining as it does of the Circuit decree for failing to find the whole consideration of the bond and mortgage sued on here to be for purchases, and also for money loaned, we have but little trouble in disposing of it in the light of our decision just announced of the question raised by the fifth exception; for we have held that, instead of the defendant purchasing the property mortgaged by her husband to the plaintiff, she assumed the payment of his indebtedness to Kuker. The Circuit Judge did hold that a part of the mortgaged debt was for borrowed money. This exception must be overruled.

# 122 KUKER *v.* McINTYRE.

The second exception, in the light of the Circuit decree, is untenable. The Circuit Judge did hold that even if he conceded that $400 was borrowed, the testimony showed it had been paid. In this he was correct, for the plaintiff admits the payment of $149.75 on 15th October, 1884; the further sum of $257.75 after the 15th December, 1886, and, as we shall hereafter show, plaintiff has further admitted a payment of $278.71 prior to 15th December, 1886. As to the third exception, it seems that the Circuit Judge did fail to properly locate the credit of $149.75, but this was a harmless error, as is very evident when the testimony is made the basis for a calculation. Take this statement of the matter: Amount in cash borrowed on 15th December, 1883, $300; interest on same to 15th December, 1884 (ten months), ten per cent., $25—$325. Deduct amount paid on that day, $149.75—$175.25; allow interest on $175.25 at ten per cent. from 15th October, 1884, to 15th December, 1886, $37.94—$213.19. Place as a credit upon this amount due, as we have seen, on 15th December, 1886, the sum of $278.71, and we find that the defendant has overpaid the $300 by $65.52. We will explain how this $278.71 is obtained as a credit. The plaintiff admits that the defendant owed, on 15th December, 1886, *as the balance for both principal and interest of the bond,* the sum of $871.54. This result could only occur by giving the defendant credit for $149.75 and $278.71, as an additional payment. Thus it may be seen, bond for $1,000, with interest at ten per cent. up to 15th December, 1886 (three years), $1,300; deduct the admitted payment of 15th October, 1884, $149.75—$1,150.25; from $1,150.25 deduct the amount admitted by plaintiff to be due 15th December, 1886, $871.54, and thus you will determine that credits other than $149.75 were $278.71. It is thus manifest that the error of the Circuit Judge was a harmless error.

Lastly, the fourth exception will be considered. There can be no doubt that if the defendant had actually owed the sum of $1,000, and that although that amount was secured by a bond, but was made up of two or more matters of indebtedness that could be distinguished from each other, and the obligee may have made a payment upon the bond generally,

and afterwards the obligor would desire the obligee to apply the general payment to *one* of the two or more matters of indebtedness covered by the bond, under certain circumstances the obligee could successfully deny the right of the obligor to change the application of the partial payment of the bond. This rule can have no application to a bond made up, as in this case, of $600 due by the husband and void as to the defendant, and $400 that she actually owed for money or goods she herself bought. The payments here made by the defendant must be applied to the only debt she owed.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.